Good morning. Cause of Action v. CTA. Mr. Fisher? Good morning. May it please the Court. Counsel, David Fisher for Appellant Cause of Action. The False Claims Act's public disclosure bar does not require dismissal of this case. First, two of the relevant documents were not in the public domain as they were not three channels that are set forth in the False Claims Act. To the extent that this Court's 1999 decision in United States' X. R. L. Matthews v. Bank of Farmington applies and would find that they are public nonetheless, this Court should take the opportunity to at a minimum clarify its decision in Farmington. Second- Do we really need to reach that question in this case, sir? You don't. Even if Farmington does apply, the Court below failed to apply it properly and have failed to apply subsequent cases, the documents at issue. You would, the letter from FTA to the CTA, you do admit that that was a publicly disclosed document? It was not publicly disclosed. It was not in the public domain until it was attached to cause of action's opposition to CTA's motion to dismiss. A moment ago you said two of the three documents were not publicly disclosed. At least that's what I understood you to say, and I thought you meant the technical report and the audit report. Am I correct? That is incorrect, Your Honor. The technical report was not public, nor was the FTA letter. The Illinois Office of Auditor General's audit in 2007, however, is in the public domain. It is not a public disclosure, however, as it does not contain facts establishing the essential elements of fraud. In fact, if you were to look at that audit report, on page 72 of the 300-page document, there are a few sentences regarding, saying that the auditor, its review raised questions about the reporting of revenue miles. It does not state or have any information about who these miles were reported to. There is also no information in there about any sort of federal funding program or any federal program or funds at all. As such, there is simply, there is also nothing in there about any sort of scienter or any of the other elements, any of the other essential elements necessary to plead fraud. And that's true with the other two documents as well, the two documents that are not in the public domain. So, in your view, there are none of these documents? None of the documents are public disclosures. Two are not in the public domain. I see. So Mr. Rubin's memo is not in the public domain. Well then, we do need to reach this issue of the continued viability of our case, right? We believe so, yes. And we believe that that decision is not in accord with the statutory text. It's not in accord with the majority of the other courts that have looked at this. And it's not in accord with the purposes of the public disclosure bar, which the Supreme Court has recently clarified in its Graham County decision. In that decision, it noted that in 1986, Congress replaced in the False Claims Act what was known as the government knowledge bar, and it replaced it with the public disclosure bar in order to, quote, strike balance between encouraging private persons to root out fraud and stifling parasitic lawsuits. The First Circuit, in its opposition to our position, makes it clear that that's a three. But it's been around for a while. Farmington has been around for a while, although it was reversed in part. Another part of it was reversed by this court in its Glazer decision. And the court should today take the opportunity to reverse another part of Farmington, in part because in Farmington, that court asserted without any citation or support that a purpose of the public disclosure bar is to bring fraud to the government's attention. There is simply no support for that proposition. It's not the purpose as articulated in Graham County or in the Supreme Court's 2003 decision in Cook County, nor does the congressional record support that as a purpose. In fact, the congressional record makes clear that Congress replaced the government knowledge bar with the public disclosure bar out of a concern that, quote, there are instances in which the government knew of the information that was the basis of a key tam suit, but in which the government took no action. The Graham County Court, the Supreme Court, recognized the importance of the public disclosure being in the public domain, stating that the False Claims Act's public disclosure bar deprives courts of jurisdiction over key tam suits when the relevant information has already entered the public domain through certain channels. This court has similarly recognized the importance of the statutory tax and the public domain in its Feingold decision, the United States XREL Feingold from 2003, in which it held that a public disclosure happens when the critical elements exposing the transaction as fraudulent are placed in the public domain. In that decision, the court also noted that this public domain holding was, quote, consistent with the public disclosure bar's function of prohibiting parasitic lawsuits and comports with the FCA's broader goal of encouraging lawsuits based on information that is not available to the public. The Cook County decision by the Supreme Court in 2003 also recognized this purpose, and it noted the repeal of the government knowledge bar allowed private parties to sue even based on information already in the government's possession. Now we argue that none of the three documents here contain any of the essential facts establishing any of the essential elements of a fraud, but even if this court were to agree, at least for the two that are not in the public domain, because they're not in the public domain, Farmington should not apply and the public disclosure bar would not prohibit this case. In particular, I'd also like to point out that none of the three documents include information about all of the years that are issued in the complaint. The memo by Mr. Rubin, which was written in 2006, only deals with a small subset of years 1999 through 2004. Similarly, the Illinois Office of Auditor General's report only deals with those same years. The FTA letter, the letter in 2012 from the FTA to the CTA, the only year that's specifically mentioned in that letter is 2011, a year that's not even at issue in this case. The FTA letter also was written after Cause of Action filed or submitted its initial disclosure to the government prior to filing its complaint as required by the False Claims Act. As such, it could not have been the basis for our initial disclosure or our complaint in this action. Additionally, it's unclear in that letter what, if anything, the government was doing. It refers to both an in-depth review, an initial inquiry, and a study of the situation. But as the District Court noted in its opinion below, the letter simply requires revision of 2011 data in order to ensure application of a consistent definition of revenue service across all transit systems. This letter is not about wrongdoing, about fraud. It's not about federal funding. It's about the consistent reporting of data for administrative purposes. Well, it's clearly about misreporting of revenue miles, right? Based on an improper metric. Correct. It does ask us to... And those are the critical elements of the allegations here, right? The CTA was using an improper metric for all these years and was ordered by FTA to stop, and then to go back and recalculate a single year. That seems irrelevant for purposes of the claim here. The fact that the remedy that FTA ordered was only to recalculate a single year. What's important is that the FTA had actively conducted an investigation and sent an order to the agency to cease and desist the application based using this erroneous metric for calculating revenue miles, right? And that's what your suit is based on. It only touches upon part of that. Certainly the reporting of revenue miles is an important element of the case, but there are other essential elements that would be necessary to establish fraud. Additionally, the FTA letter only deals with 2011. While it does make a reference to prior years, what those years are is unspecified and unknown. There's also nothing in the letter about the revenue miles causing the federal government to pay out any additional funds. Well, that's not necessary for the public disclosure bar to apply. The based on element of the public disclosure bar is not as specific as you're seeming to claim here, and in any event, you didn't challenge that as I understand it. What you're arguing right now sounds like an argument that your claim isn't based on those public disclosures because you added to it. We are not arguing based upon as to the Mr. Rubin memo or the Illinois Office of Auditor General report. However, under the first part of the three-part test of the public disclosure bar, the public disclosure has to contain the essential elements, facts related to the establishing of fraud. So you have to look at just the public disclosure to determine whether or not that disclosure in and of itself contains those essential elements. If you get past that stage, which we think is not necessary here, you then get to the second step, which is based upon the substantially similar test, and then you get to the third step, which is original source. I think you're reading too much into that language from Feingold, repeated in other cases, Glazer and others, about essential elements. It doesn't suggest that the public disclosure has to establish that a fraud has occurred. It just has to contain facts or allegations suggesting that fraud is afoot or may be afoot. It doesn't have to establish anything. Well, the cases do, as Apsher said, quoting Apsher, it does have to contain facts establishing the essential elements of fraud. Not establishing. Right. Nothing has to be proven. Correct. But there needs to at least be facts in there. And so, for example, in Apsher, the court specifically noted that the disclosure there, it did not contain information regarding It did not contain information regarding all of the types of fraud that was present there. There was also not information regarding Right. Apsher was a case about regulatory noncompliance in a very different context than we have here. We have overbilling going on here, apparently, is the claim, right? I think there's overbilling in both cases. And in both cases, the entity Apsher was false certification of regulatory compliance, right? Correct. Not overbilling. No, but it resulted Different kind of false claims that claim. Correct. Off the table. Yes, but it did result in overpayment by the government. And so similarly here, yes, there's this reporting of miles. But if you look at the Illinois Office of Auditor General's report, there's nothing in there about any sort of federal funding program. It would take considerable knowledge and expertise, as well as additional facts, to know that CTA, with knowledge as defined by the False Claims Act, submitted or caused to be submitted claims to the government. Or even what the claims would be, or what the federal funding program at issue is. None of that is present in those documents. I see that I'm out of time. Yeah, but I'll allow you some time for a little thought on this. Thank you. Ms. Kaplan. May it please the Court, the only question presented here is whether Kasovash's lawsuit is precluded by the Public Disclosure Bar. The District Court held that it was, and dismissed the case, and the CTA asks that this Court affirm. The purpose of the False Claims Act public disclosure provisions are to alert the government that fraud is being perpetrated against it. But if the government already has that knowledge, which is what occurred here, a Keaton lawsuit serves no purpose. After the 86th Amendment, is that the only purpose of the Act? I'm sorry. After the 86th Amendment, is that the only purpose of the Act? Yes. Cases since 1986 also say that the purpose of the False Claims Act and the Public Disclosure Bar are so that the government is apprised of information about fraud being perpetrated against it. Congress was not at all worried in the 86th Amendment about prodding the government to take action, not sit on it? Whether or not the government takes action or does not take action is not part of the All that needs to happen is that the government needs to be aware of a potential fraud being perpetrated against it. There is no requirement, as identified in Glacier, that the government act on that information. So you think we are right on the statutory interpretation question? I think that this Court, through the 1986 and the 2010 Amendments, has implicitly said that the purpose of the Public Disclosure Bar is to alert the responsible authority that fraud is afoot, and that is exactly what is happening. So you think we are right? Those other circuits just got it wrong? Yes. This circuit is correct. In Farmington, in Caremark, in Glacier, in all the cases that talk about the Public Disclosure Bar as having an intent of letting the government know about the alleged fraud or issue a document reflecting this knowledge, this Court has identified in several cases that that is, in fact, the standard here. And here, cause of action came to the scene too late. By the time they filed its complaint, the government had already received information about the CTA's allegedly improper VRM reporting, both through the audit report and through the technical report, and moreover, the FTA had investigated the CTA and had required it to revise its 2011 data. So clearly, this is nothing but a parasitic question. If we are wrong on the statutory interpretation question, okay, if we should reverse ourselves and join the crowd, in that case, how do you get through the requirement that there be a public disclosure under the interpretation given by the other circuits? Even if this Court decides to reverse Farmington, which it should not, because in this case the government was already well aware of the allegedly fraudulent conduct by the CTA well before cause of action filed this complaint. In this case, the audit report clearly constituted a public report. It was released to the public. It was releasable to the public. It was available on the website. There's no question that that was a document in the public domain. And the audit report specifically said that its review raised questions about the accuracy of CTA's reporting to VRM and that CTA may have been incorrectly reporting to VRM. That was enough under the standards of this Court by which a Court could determine that fraud could have occurred. Even though the CTA denies that fraud occurred here, that was enough information under absurd for this Court to infer fraud. Nevertheless, there was clearly a public disclosure here by the other two documents as well because this Court has consistently found that a public disclosure occurs if there's a disclosure either to or by the government. And there is no question that that happened with the technical report. There is no question that that happened with the FTA letter. So those are definitely public disclosures. But again, even if this Court decides to look at Farmington and reverse it, which it should not because the government already knew about the allegedly fraudulent conduct here and did an investigation on it, the cause of action still cannot bypass a public disclosure bar. In addition, cause of action's complaint was based upon or substantially similar to the public disclosures. This Court in Glacier said that the disclosure, that based upon does not mean solely based upon, but it could mean partly based upon. Here, the complaint and the public disclosures described the same entity and the same conduct. The CTA was the same entity and the same conduct was allegedly improper reporting resulting in federal overpayment. The complaint and the public disclosures were also substantially similar. In fact, the complaint here completely lifted all the information about the CTA's VRM reporting from the technical report or publicly available data on the NTD website. Cause of action has not shown otherwise and it has the burden of proof. Cause of action did not bring any new information to the table. They simply tacked on a characterization of fraud to already disclosed information in the technical report and additional instances of fraud does not take it outside the jurisdictional bar. Unless there are further questions, the CTA asks that this Court affirm the District Court's dismissal of cause of action's lawsuit. Thank you. Ms. Kaplan. Mr. Fisher, you may have an additional two minutes. Three very quick points. First, the government's decision to or not to take action as a result of a public disclosure is important. And in fact, the False Claims Act is designed to allow a private party to bring an action even when the government declines to intervene and bring the lawsuit. So whether or not the government knew about a fraud or didn't know about a fraud, whether it took action or didn't take action, whether it intervenes in a case or not, it's not relevant for the purpose of the public disclosure bar. But it certainly is, certainly the Congress in establishing the False Claims Act wanted parties to be able to proceed even when the government disagreed with that private party. Second, as to the purpose of the public disclosure bar, in addition, or I'm sorry, as the Cook County decision made clear and the Graham County decision, there are purposes of the public disclosure bar, such as stifling parasitic lawsuits and encouraging people, whistleblowers, to stifle or to root out fraud. And Farmington's decision where it said with no support that a purpose of the public disclosure bar is to alert the government that fraud is afoot or that to alert the government as to fraud. I think a later case used the phrase fraud is afoot. That purpose is not found in the congressional record. It's not found in the Supreme Court precedent. It is only found out of this circuit's precedent and other courts have disagreed with it. Moreover, the Farmington decision does not advance the purposes of stifling parasitic lawsuits. If a disclosure to a single or a small limited circle of government officials was a public disclosure bar, then you could not have a parasitic plaintiff who does not have direct independent knowledge, i.e. an original source to bring the case. We were just told the audit report was on the website. I'm sorry? We were just told the audit report was on the website. The audit report is in the public domain, but it does not contain facts established in the essential elements of the fraud that are issued here. It only deals with a small portion of the years at issue as well. There's no mention of any of the federal funding programs, but I see that I'm out of time. Thank you, Mr. Fishman. Thank you, Ms. Kaplan.